154 So. 731

## STATE v. LOUISIANA TERMINAL CO.

No. 32727.

April 23, 1934.

C. J. Larkin, Jr., of New Orleans, for the State.

Terriberry, Young, Rault & Carroll, of New Orleans, for appellee.

ODOM, Justice.

The state, through the tax collector, ruled defendant to show cause why it should not pay to the state an annual license tax for the years 1931, 1932, and 1933. The rule was brought under section 10, Act No. 190 of 1932 and Act No. 310 of 1926, which provide that every person, firm, association, or corporation carrying on the business of "keeping a warehouse, storage room, or landing where goods and merchandise are received and delivered" shall pay an annual license tax based upon the gross receipts, etc.

Specifically it is alleged that the defendant, which is a corporation, is engaged in the business of "keeping a * * * landing where goods and merchandise are received and delivered."

The defendant urged as grounds of defense, first, that the business in which it is engaged is not embraced within the provisions of the above-quoted statutes, that it is not engaged in the business of keeping a landing where goods and merchandise are received and delivered, and that its business is therefore erroneously classified; second, if its business is properly classified under the

statutes above quoted and if the said acts are so construed as to exact a license tax from it, they contravene the commerce clause of the Federal Constitution (article 1, § 8, cl. 3) in that they lay a burden upon interstate and foreign commerce.

The trial judge held that the defendant was not subject to a license tax and discharged the rule. The state appealed.

If the first defense is good, the judgment must be affirmed and the second need not be discussed.

The facts as to the nature of the business carried on by the defendant are not disputed. Bauxite ore is mined in the British and Dutch Guianas in South America and shipped to East St. Louis, Ill. The ore is brought from the mines in South America to New Orleans in ships. From the ships it is transferred to waiting railroad cars on the tracks of the Missouri Pacific Railroad Company and carried by rail to East St. Louis. The transfer from the ships to the railroad cars is made by machinery owned by the Missouri Pacific Railroad Company, located on property either owned or controlled by it. This machinery consists of an electrically driven gantry crane which lifts the ore from the ships, carries it out over the dock and levee, deposits it on conveyor belts, which in turn dump it into the railroad cars. The movement of the ore from the ships to the cars is continuous. It never comes to rest and is never stored. The defendant is engaged solely and exclusively in the business of operating this machinery. It furnishes the electric power, which it purchases from a utility company, as well as the labor necessary in operating the machinery. For the service of operating the machinery and of making the transfer of the ore from the ships to the cars, the defendant is paid so much for each ton of ore transferred.

The record discloses that there are several corporations connected with the mining, transporting, and handling of bauxite ore and that the defendant corporation has no connection with any of them, although it and all the others are subsidiaries of the Aluminum Company of America.

The defendant neither owns, leases. keeps, nor controls the place where the transfer of this ore is made from the ships to the cars. As already stated, the defendant is engaged exclusively in the business of operating the machinery with which the transfer is made.

It cannot therefore be said that defendant is engaged in the business of keeping a "landing where goods and merchandise are received and delivered." The term "landing," as used in the statutes, means a place on a river or other navigable water where goods and merchandise are loaded or discharged. It has the same significance as a wharf, which is a "structure on the margin of navigable waters, alongside of which vessels can be brought for the sake of being conveniently loaded or unloaded," or "a space of ground, artificially prepared, for the reception of merchandise from a ship or vessel, so as to promote the * * * discharge of such vessel." Words and Phrases, First Series, vol. 8, p. 7433.

In Reighard v. Flinn, 194 Pa. 352, 44 A. 1080, the court said, in substance, that a landing does not necessarily include a wharf,

and that the difference is that a wharf is an improved landing.

A landing "is a bank or wharf to or from which persons may go from or to some vessel in the contiguous water." City of Napa v. Howland, 87 Cal. 85, 25 P. 247, 248; State v. Randall (S. C.) 1 Strob. 110, 47 Am. Dec. 548.

The term "landing," as used in section 10, Act No. 190 of 1932, and Act No. 310 of 1926, requiring a license for the keeping of a landing, necessarily refers to a place, and the keeping of a landing to the keeping of a place. The defendant is not engaged in the keeping of a place of any kind, but is engaged solely and exclusively in operating machinery for removing freight from ships to railroad cars.

This holding disposes of the case and makes it unnecessary to discuss the second defense. The judgment appealed from is affirmed.

ST. PAUL, J., absent.